Case No. 17-7152, Ivy Brown, on her individual capacity and as representative of the certified class of appellant, Larry McDonald, et al., v. District of Columbia, a municipal corporation. Ms. Bagby for the appellant, Ms. Lovesack, and the applicant, DC. Ms. Bagby, good morning. Good morning. May it please the Court, my name is Kelly Bagby. I am here representing the Ivy Brown and the class of folks who are trying to get out of nursing homes in DC. DC, the District Court applied the wrong legal criteria in this case. The District Court committed a legal error, multiple legal errors, by requiring that plaintiffs show a specific inadequacy impacted every person in the class in the same way and that that inadequacy was the real cause of their segregation in nursing facilities. How many are we talking about? How large is the class, the latest number in the record? The class is estimated of people who are eligible for services and want to get out, at about 65% of all people that are in nursing facilities, so somewhere around 1,000 to 1,200 people. Okay. This Court should remand the case so that the District Court can apply the correct legal analysis to the evidence, looking at whether it was DC's failure to provide transition assistance to all class members that contributed to their risk of institutionalization, not that it was the sole cause. The Court provided no support for the proposition that the plaintiffs had to prove a single deficiency, a single inadequacy was that sole cause of their segregation. When this Court looked at the D.L. v. D.C. case, the D.L. 2 case, it found that it was sufficiently concrete for one of the subclasses that had the assessment, the assessment subclass, that that class only, that D.C. was only assessing those kids 20% of the time in a timely way. So that meant that if you were in the lucky 80%, you might have gotten your assessment timely. But for 20% of the kids, they weren't. And so you just hope that you don't fall into that category. The same is true for the class, the Brown class. But there, there was a benchmark, at least a timing benchmark, that was present in the regulatory scheme. Here, we don't have a particular timing benchmark or something specific in the regulatory scheme that you pointed to that was not being done lawfully. Well, what we have is the Court's own finding that there are six components to transition assistance. And one of the first one of those is to provide an assessment as soon as upon admission, and many times, many intervals after that. The Court found that this concept of transition assistance was sufficiently definite to warrant a class certification. And at this point, what we're, what the District Court has done is because she shifted the analysis to showing that any one piece of the six components was so broken, is that that's the real reason the class is stuck. And that's not supported by Olmstead case law. Olmstead case law shows that if a person, if a class of people can show that they are eligible for services, they desire to get those services, and that the government entity can reasonably accommodate their need for services in the community, the District has to do, they have to act, they have to take action. And that action is, in this case, necessary to provide those transition services to all of the class members. Yeah, but I mean, the question that my colleagues asked me, the District Court, we had some skepticism when the case first came up about class certification. We allowed it, but clearly are skeptical of it. And District Court on remand followed up on that and was skeptical in finding that there really was a proper class certification. And District Courts were entitled to do that on remand in this situation. When you look at it carefully, they have doubts. Now, the Court had doubts now and a very comprehensive opinion. And what Judge Wilkins asked you is, what's the regulatory policy failure? You can't cite the DL without pointing to what is it that is a failure that affects all class members. And the District Court said it couldn't find it. Well, the reason the Court couldn't find it is because it was looking through the wrong analytic prism. The right analytic prism is that the ADA requires that a government entity modify its policies and practices in order to avoid institutionalization. It doesn't say that all the class members had to be cured of their segregation. In fact, plaintiffs have never asked that we make... But the question is, what is it they're doing wrong as a matter of policy? As a matter of policy... The District Court found that they did have a plan, a lawful plan, in effect. And so what is it that they're doing wrong as a regulatory matter? I'm not getting it. Well, with all due respect, the District Court did not find that they have a plan in effect. The District Court did not find that there was any illegality. Now, your brief continues to assert that in the earlier period, the Court found some illegality. I don't find that in the District Court's decision. Well, the District Court explicitly repeated that in 2012, in the motion to dismiss, she found that D.C. did not have an effective Olmstead plan. In 2014, she again repeated D.C. has not proven that it has an effective Olmstead plan when it certified the class. Then when she gets to... When the Court got to 2016, the Court made no findings about whether or not there was an effective Olmstead plan. What she said was the plaintiffs had not proven that there was a deficiency that would, if corrected, would result in the deinstitutionalization of the class. That is not what the class... The class has always asked that we have... That the plaintiffs are given the fair opportunity, the opportunity to access public benefits. That can only be, you can only have that concern if it arises from some regulatory failure. That's what we're trying to figure out. What is a regulatory failure? You said there's no fair opportunity because why? Because the ADA and Section 504 of the Rehab Act require action when a group of people with disabilities have been discriminated. The law also recognizes that it may not happen because of other factors with respect to which the city has no control. Well, that, I believe, goes to the point in D.L., the point that this Court made in D.L., that if, with the assessment class again, if the parents are not cooperating with consent, that goes to whether or not D.C. is in compliance with an injunction. It doesn't go to whether or not there is a need for a structural injunction. In this case, there is a need for a structural injunction. D.C. did, took no steps to help this class and before this class. And the injunction would say what? The injunction. The injunction would say what? The injunction could be a number of things, but it could tie the resources of the D.C. Office on Aging to the number of people who want help to get out. It could provide for the elimination of a number of concrete policies that D.C. has. Like what? Well, D.C. refuses to serve people in the first 90 days in their nursing home. But in their policy, their policy at page 367 in the Joint Appendix explicitly says that the first 90 days is when most people will lose their housing. So D.C. is exacerbating the risk of institutionalization with that policy. D.C. has other policies where they have not done a comprehensive assessment of the need of the whole class. They did one assessment over the course of litigation of 704 people. That's roughly a quarter of the overall group of people in nursing facilities. But even that assessment found that 65% of the people want to get out and are eligible to get out. That's the class. So no matter whether they have any place to go? Well, the fact is that as this case has gone on and D.C. has provided small amounts of transition services to the class, small amounts of people have gotten out. We've proven during the course of this litigation that the provision of transition services will help if you provide it at the earliest point. So no matter whether they have any place to go. Didn't the district court say that that's one of the difficulties? She said that is a challenge. A crucial difficulty. If there's no place to go, how can you transition somewhere? Well, but the part of the, and you see in the six elements of transition services, several parts of those components go to helping people to find housing. Not everybody in this class does not have housing. And obviously because many people have transitioned to the community during the course of the case. My understanding is not everybody needs public housing. They need financial help to go back to their sister's house or their daughter's house or something, or an apartment by themselves. Yes, that is true. That is true. And there are many people who have, they have housing waiting. The point that there's a huge demand on public housing, thousands and thousands of people, doesn't mean that there aren't members of this class who, if they get this transition assistance, could get to community-based living, which is their right. That is exactly right. We'll give you some time to reply. Sorry, I appreciate that. All right. Ms. Lebsack? Following a trial, the district court found that the class failed to prove its case for two reasons. Each reason is supported by the record in the law, but I will start with Judge Edwards' question, which is, what is the district doing wrong? The district is doing nothing wrong, as the district court found. It's important that we're clear on what the district court did and what we're reviewing. My reading of the opinion is that the district court found that the motion for class decertification that was filed by your client should be granted and decertified the class, and therefore, since class relief was the only relief being sought, enter judgment for the defendant. Do you agree that that's what happened? The class failed to prove its case because it did not show an entitlement to class relief. Class relief was the only thing the class asked for. They did not prove it. Judgment was entered for the district, so I agree with you. Okay, didn't sound like you agreed with me, but the district court, as I read the opinion, found that commonality under 23A2 was not met. Correct. Okay, and the district court made that finding based on the fact that even though the class was defined in terms of inadequate transition services that were being provided by the district, and that was a common question, that that question didn't really have a common answer. That's right. And the reason it found that it didn't have a common answer was because it found that housing was really the problem, as opposed to the services that were being provided. That's the second part of what the district court found. The first part of what the district court found was that at no point in the provision of transition assistance was the district failing to provide it. So the district court looked to each aspect of transition assistance that the class had identified. The gravamen of the class's claim was that the district failed to do multiple things, multiple systemic deficiencies. So, for example, this court... But the district court didn't start with what you're saying it started with. It started with the fact that it said that housing was the real problem here. I mean, that was the first finding of the district court, wasn't it? Housing is a problem, and it's one of the reasons that class members face barriers that are not within the district's control. The reason the district court found that class members were not actually transitioning were a sort of a cluster of individualized barriers, which was not part of the district's sort of systemic provision of transition assistance. So, absolutely, housing is a barrier that the district can't solve. And the district court said, therefore, an injunction that I would enter about transition assistance wouldn't solve class-wide segregation. It wouldn't provide sort of a class-wide desegregation at all. That's the 23b2 finding. I thought we were talking about 23a2. The district court's 23a2 finding was that there was no systemic problems in the district's provision of transition assistance. And the way the court did that makes a lot of sense. She looked at each component the class had put forward, and with respect to each, she found there was no systemic deficiency. So, as to outreach, no deficiency. And, therefore, at the end of that, after going through each and saying, well, no, the district is doing exactly what the class said they failed to do, and that's rejected, it's essentially zero plus zero plus zero equals zero. With no systemic deficiency in any component of the district's transition assistance. What about the 90-day delay that your colleague mentioned? There are two problems with that claim. The first is that the class definition here begins after the 90-day mark. The class has long conducted its case as a class that, at the point of 90 days, becomes stuck. So, it's not at all clear how the class is seeking relief for people who are not in the class. Notwithstanding that, as the district points out in its brief, we do provide transition assistance prior to the 90 days. It's simply that, at the district court, everyone agreed that 90 days was a pretty good benchmark for people who might need transition assistance, which is the class definition. Let me turn to the question of whether this is at all like DL2 subclass 4. As you mentioned, Judge Wilkins, that class had a timing benchmark. This class doesn't. What they were required to do, therefore, is define in their complaint what they thought the problem was. And they said, the problem is the district fails to provide outreach. The district fails to provide information to people. The district fails to track people through the system. These were the failures they set out to prove. They failed categorically to prove any of those deficiencies. And so, this class is essentially not at all like the class. But the primary finding of the district court was that those deficiencies, even if they did exist, wouldn't solve the problem, which is that there's no housing. And what the appellants are saying is that that's really asking the wrong question. It's not whether if the district provided better than crappy transition services, everybody would get housing. It would be that if they provided better than crappy transition services, they would at least have a fighting chance at getting housing. What's wrong with that argument? The first thing that's wrong with the argument is that it presumes the very deficiency the class failed to prove. If there is no deficiency, it simply does not matter whether or not that deficiency was contributing to or a tantamount to segregation. There are no deficiencies. So, the case can stop there, and this court could write an opinion. The district court seemed to think that there were deficiencies. I mean, the district court didn't give the district a ringing endorsement at the conclusion. And it said that there's really nothing that the district really has to be proud of or something to that effect with respect to the services that it's provided. The district court found that the district is providing an effective transition assistance system. There's no dispute about that as a factual matter. The only legal problem identified by the class is this sort of level of generality that they say undermines the district court's finding that there were, in fact, systemic deficiencies. And as your question points out, that's simply quite wrong. So, no deficiency means the district is doing nothing wrong, and the analysis ends there. It is a completely sufficient way to affirm the judgment to simply say the district court, in detailed findings, found that the district was providing the very transition assistance the class alleged that the district failed to do. That's all that's required here. The district court did go further. She said, in any event, if there was a deficiency, if I entered in an injunction to remedy it, it might remedy that deficiency, but it wouldn't remedy the class's segregation. And that's quite right. The class, the sort of the gravamen of this part of the class. Isn't that the crux of the problem? I mean, the lawsuit shouldn't be measured as to whether it's a success or failure as if it eliminates all segregation, right? Olmstead requires that the district not maintain or administer its Medicaid program in a way that results in segregation. That much is clear. But we don't even get to that problem because they didn't prove that the district was actually doing anything wrong. The reason the district court found that people were not transitioning out was not due to the district's transition assistance at all. Rather, there were numerous individualized barriers that were preventing that transition from happening. So class-wide relief, which is the question here, can they maintain a class action? The district court said they cannot. Do you think we have the option of ordering the class to be decertified? Because the class failed to prove its case, by definition, the class is decertified. It's not, you know, the district court's judgment is exact. The district court said the class has not put, you know, has not satisfied Rule 23. Therefore, and that's all there is in the case, are the class claims. The case is over. The case is certainly over. Thank you. Thank you. Your judgment should be affirmed. Does Ms. Bagby have any time? No. Why don't you take two minutes? Two minutes, sorry. Thank you very much. So just to start with, the district court did not find that the defendant's performance was satisfactory. Far from it. The court identified problems with connecting people with home health agencies, helping people to get documentation. The court identified a whole category of things which it said were things that are kind of in a miscellaneous character. But the simple fact is, the things the court identified are all things that would be solved with an effective system of transition services. But the court was talking about individual difficulties, individual issues that affect individual members, not systemic problems. But the failure to provide assistance with getting documentation that you need for applications is a systemic problem. No, that's not. Well, it may be here. You'll have to point me to it. I'm looking at it again. Maybe I missed something. That's not what the district court is saying. On Joint Appendix 459, the court said that – she specifically said that the nursing facility residents have the added trouble of being able to get proper identification documents they need to apply for community-based services. She was saying that as a systemic problem, that is something – that is a systemic problem common to the class, and a remedy is therefore ordered. But the point that the class is – She's saying quite the opposite. She says, yes, in individual cases there are some issues. Yeah. But she's not finding any systemic problem. But that – I mean, you may say she's wrong, but she's certainly not saying what you're saying. Well, she also identifies, for example, the inability to connect class members to home care workers. And then she – that's at JA 459. Then she goes on to talk about Mr. Foreman. And Mr. Foreman specifically lost housing to apartments because he was unable to connect to home care workers. And that's squarely the responsibility of the D.C. Medicaid agency to make sure they have adequate capacity to serve the people who are coming out of nursing facilities. These are systemic problems that fall on the shoulders of the District of Columbia. And were they running a functioning system of transition assistance, people would have a better opportunity. We don't guarantee – Can you comment on the opinion where you think the district court says there are these systemic problems with respect to these kind of administrators? I just don't see it. Well, when she – I understand you're – I hear what you're saying, but I think she is saying there are occasions when there are difficulties, individual difficulties. Right. Which is very different from her saying D.C. just does not know how to operate under the plan, and they're not doing what they're supposed to be doing as a systemic matter. Where is that? They are not providing transition services to all of the class members, and that is the obligation. When the class members are by definition being discriminated against by – as Supreme Court has defined, because they're unnecessarily institutionalized, that unjustified segregation is not due to the fact that they're homeless. It is due to the fact that they have a disability, want to get out, and are eligible for community-based services. It is D.C.'s obligation to build that bridge from the nursing facility to the available services that it has. And if it doesn't do that, that is the violation. The problem is the court wanted us to look at this so granularly, but it's a system. Transition services is a suite of services. Are you saying about the lack of available housing? Well, if the lack of available housing is – and she didn't say there's no housing. Obviously, she couldn't say that because class members were going out and finding housing. But if housing is the barrier that D.C. can point to, it eviscerates the whole Olmstead integration mandate, because all you have to do is do nothing about housing, and you now are absolved of all responsibility. What are you saying a city is supposed to do in that situation? She certainly does make a finding of the lack of available, affordable, and accessible housing. Yes. There's a whole heading on it, and it's heading A. And if you look at the third prong of our class definition, it is that people who would live in the community, prefer to live in the community, if D.C. will help facilitate their – What does that mean? Because – give them the opportunity. I'm being really serious now. As a judge, I'm assuming I'm sitting on the district court bench, and you say, Well, that's no answer, that there's no housing. The city should be made to do something. Well, what does that mean? So I'd have to now write an injunction. All right, the lack of available housing is an issue, but the city shouldn't be able to point to that. The city has to go do what? The city should get – should provide transition services to the class members who are eligible for services because housing can emerge tomorrow. No, no, no, no. They need to be in a ready – I'm trying to understand your argument. You're saying a lack of available housing shouldn't be an excuse. The city should make that better. All right, I'm a judge. What does my order say? You cannot use lack of available housing as an excuse. You have to deal with that and cure that problem. And therefore, I order the city to what? Get more housing? Build more housing? What? Well, so just backing into this because this is an Olmstead context, the statute and the Olmstead case law lays out what we do. You would have to remand this case so that D.C. can prove that it actually has done all it can do to help secure housing. We don't know that. There's no statement by the judge that there is no housing. She said it's an obstacle. And the argument and the case, the experience of our class members, has been that when people did get transition assistance, they had a better shot at finding housing, connecting to services, and moving to the community. So your answer to Judge Edwards' question is that the city has to provide more effective transition services? To every member of the class. And exactly what more effective transition services? Like in what area? What is specifically not being done? What should be done? It's a suite of services. Transition services, as the judge laid out, have six components. So there would have to be individual assessments when people come into a nursing facility and periodically thereafter. Providing information to people so that they can start understanding how they could maybe self-advocate to find their own services and housing. And then discharge planning that commences upon admission and includes a comprehensive written discharge plan. So that here are the obstacles for Kelly Bagby to getting out to the community. Here's a plan. How are we going to effectuate that plan? But for each person is entitled to that level of assistance. And then also identification of services and helping to arrange them. Because these are people who have lived, you know, for almost a decade in a nursing facility. They're not able to go navigate this very complex administrative system. And finally, assistance in applying and enrolling with available, you know, federally funded waivers that would pay for the services. None of this is a guarantee that people will get out. But it does give them a better opportunity. And it gets them into a state of readiness so that when housing does come up for people, a family member decides they do want to bring them back. They can't be sitting there waiting for another year for all these other pieces to be put in place. And that is what an effective system of transition assistance is. And I believe our amicus brief from the various disability groups sort of lays that out. That that is what has worked across all populations. So you're saying the district court's finding in part renewal to all of those subparts are wrong. Because the district court in that part rejects all of what you just said. The district court said the services you're claiming are not being afforded are being afforded. And you haven't proven otherwise. What the district court said is... Are you saying the district court was clearly erroneous or what? No, we're saying that she's analyzed the concept of transition services improperly. Because she's looking at it in such a way that she wants us to find the one thing that is the true reason people are stuck. No, no, in Part 2, in Part Roman 2, she goes through all of the assertions you're now making. She says you're wrong. So you have not proved that the district court has failed to do these things which they are required to do. I'm just not understanding your argument. What she says, Your Honor, is that we did not prove that any one piece of this was so broken that that one piece is the real reason people are institutionalized. What we're saying is this is a suite of services that if you're a person who's been institutionalized for a long period of time, you need all of these. You need every aspect of this. And every one of our clients needs it. Yeah, see, it sounds like what you're saying, which the district court probably wouldn't disagree with, that in individual cases there are folks who are not getting pieces of it, and those are individual claims. The district court is saying it's a systemic matter. She isn't finding that there's any systemic failure. But how is this any different than the assessment class where 80% of the DL assessment class were getting assessed on time, and that left 20% that were not, and that was sufficiently concrete to be the glue that held that class together. What we're saying is there's a huge number of class members that are getting nothing, and they need not just one service here, one service there. They need the suite of services or else they are not going to be able to get out of nursing facilities. Let me ask you about your proposed injunction because it has four quite detailed parts, and it seems to me that part two is really the only one that is tied to housing. In other words, by year four, 100% of class members, I don't know if there's anything in the record that says that's just an impossible benchmark. But if you take out part two, that is transition these class members so that they're finally down to a very small number, if you take that out, you're still left with the first working system of transition assistance, which has A through H services that are required to be given and that would assist even if there's no housing available to all class members, if they are aware of and have help with home care, whatever, they have a family member who says, I can take my mother if I can have a nurse there during the day when I'm working and so forth. And then the part three and four are reporting requirements. In other words, it's not just there's not enough public housing or there's no public housing. There are all sorts of preliminary things. It's the access to these and the opportunity to try to find housing on your own if public housing is unavailable. That's correct. That's correct. And there are a number of housing resources in the community. But to your point about the benchmarks, we always indicated to the court that the measure of compliance, it's like the DL analysis in DL2, that if you lay out the benchmarks, it sets the goals, but they can be forgiven if you can't hit them for reasons that are beyond your control. But you have to be able to prove that it's beyond your control. It's not enough to say it's too hard for us. Can I ask you just one detailed question? In part two of your proposed injunction, do you have it in front of you? The injunction? Yeah. What you're asking for is that the transition of class members under the various government programs, the Medicaid program for people who are the EPD waiver, the money follows the person program, and the Medicaid state plan PCA program. And then you've got other long-term community-based care programs available in the district. It doesn't say provided by the district. Right. What do you? So there are some examples like Bread for the City, church organizations, so others might need. All right. Thank you. Sure. Thank you.
judges: Henderson, Wilkins, Edwards